## Richmond

Virginia S. Shores, Et Al., Etc. v. D. B. Stout, Et Al.

December 2, 1957.

Record No. 4724.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Whittle and Snead, JJ.

The opinion states the case.

*William C. Carter* and *George Abbitt, Jr.*, for the appellants.

*J. Taylor Williams* and *J. Barrye Wall, Jr.*, for the appellees.

Snead, J., delivered the opinion of the court.

D. B. Stout and Gertrude Stout, his wife, filed their bill in chancery in the Circuit Court on January 6, 1956, praying that a certain deed conveying real property, dated March 16, 1944, wherein they

were grantors and their children, R. F. Stout and Mona M. Schalow, were grantees, be declared null and void. Mona M. Schalow and her husband, Alvin J. Schalow, Virginia S. Shores, surviving wife of R. F. Stout, who has remarried, as well as the heirs of R. F. Stout, who died intestate, were made parties defendant. His heirs included the following children: Rozine S. Secrist; Russell F. Stout, an infant; Juanita S. Lewis, an infant; Ruby V. Stout, an infant; Mildred A. Stout, an infant; and Gordon B. Stout, an infant. Woodrow A. Secrist, husband of Rozine S. Secrist and Raymond M. Lewis, husband of Juanita S. Lewis were also joined as parties defendant.

The trial court, by its final decree entered November 5, 1956, rescinded and cancelled the deed, directed grantors to pay Mona M. Schalow the sum of $100, and the heirs of R. F. Stout, deceased, the sum of $186.78, being the monetary value determined for services rendered and monies expended respectively by grantees as a result of the execution of the deed. The court also decreed that certain fees be allowed the commissioner in chancery, stenographer and guardian *ad litem*, which were to be taxed as part of the costs. Virginia S. Shores, adult defendant, and Russell F. Stout, Juanita S. Lewis, Ruby V. Stout, Mildred A. Stout, and Gordon B. Stout, infant defendants, by William C. Carter, their guardian *ad litem*, appealed from this decree.

Appellees alleged in the bill that D. B. Stout is the owner and occupant of a tract containing 16 acres, more or less, in Hamilton Magisterial District of Cumberland County; that on March 16, 1944 they "entered into a deed" with their children, R. F. Stout and Mona M. Schalow, whereby appellees conveyed them a joint estate in the property, subject to certain conditions, provisions, reservations and requirements as mentioned in the deed, and that since the death of R. F. Stout, they have had no one to "look after and provide for" them as required by the deed.

They also averred that it was their intention, with the full knowledge and consent of the grantees, that the estate conveyed was not to vest until the conditions contained in the deed had been fulfilled; that the fee simple to the real property should "continue" to be that of D. B. Stout, subject to be divested upon complete performance of the conditions and requirements in the deed; that such conditions and requirements have not been fulfilled, and that the death of grantee Stout renders fulfillment of the requirements impossible. Appellees further alleged that the existence of the deed in question

constitutes a cloud upon their title which should be removed so that they may have full use and enjoyment of the land to which they are entitled.

Virginia S. Shores and Russell F. Stout filed similar separate answers and cross bills in which they substantially denied the allegations in the bill, and asserted that R. F. Stout, deceased, had faithfully complied with all obligations imposed upon him for eight years up to the time of his death. In praying for affirmative relief, they asked that a receiver be appointed to administer the property, and that the interest of the heirs of deceased be protected.

The answer of infant defendants by their guardian *ad litem* was likewise filed. Defendants, Mona M. Schalow, Alvin J. Schalow, Rozine S. Secrist, Woodrow A. Secrist and Raymond M. Lewis failed to answer the bill.

The ultimate question to be decided is whether the trial court erred in rescinding and cancelling the deed from D. B. Stout and wife to their children, R. F. Stout and Mona M. Schalow.

The deed which was executed by grantors and grantees and duly recorded contained the following provisions:

"WITNESSETH: That for the consideration of the sum of One Dollar, the receipt of which is hereby acknowledged, and love and affection; and for the further considerations that said parties of the second part shall look after and provide for said parties of the first when they need it, and when the parties of the first part shall pass away the said parties of the second part shall at their expense give said parties of the first part a decent burial, and for the further consideration of said parties of the second part assuming and agreeing to pay a deed of trust on the property hereinafter described in favor of Bank of Powhatan amounting to $200.00, when and the same is payable, which deed of trust was executed by said parties of the first part and is of record in the Clerk's office of the Circuit Court of Cumberland County, Virginia, the said parties of the first part do grant, sell and convey with General Warranty, unto the said parties of the second, subject, however, to certain reservations and provisions hereinafter mentioned, the following described property, to-wit:"

\*    \*    \*    \*    \*    \*    \*

"The said parties of the first part expressly reserve unto themselves and to the survivor of them; the dwelling house located on said

property and including sufficient land for garden and truck patches and use of the pasture for their cattle.

"It is mutually agreed between the parties hereto, that in event said parties of the second part shall fail to comply with the requirements of them, in whole or in part, herein provided for this conveyance shall become null and void and the property shall remain that of the parties of the first part. We agree to these provisions."

Depositions were taken before J. R. Snoddy, Commissioner in Chancery, to whom certain inquiries were directed. The only witnesses to testify were D. B. Stout and Virginia S. Shores.

D. B. Stout, a retired minister, lives with his wife in the dwelling situated on the premises conveyed. Their ages were estimated by Mrs. Shores to be between 76 and 80 years. He purchased the property on November 17, 1937, paying therefor, according to the revenue stamp on the deed, a consideration of not more than $500. Its present value is estimated to be $7500. He has three children, in addition to the two named as grantees in the deed, whom he has helped in various ways. He operates a veneer yard, which enterprise his deceased son formerly conducted. His income from this project is between $30 and $35 per month. His old age pension is $30 per month and that of his wife $15. He receives annually $33 from his one fourth undivided interest in a tract containing approximately 200 acres in West Virginia. He estimated its value to be approximately $1000 per acre.

Mrs. Schalow, who resides in Richmond, installed a kitchen sink in the dwelling and visits when necessary to assist her mother in house cleaning. She paid $100 on the deed of trust note, and her deceased brother paid $100, thereby discharging the lien of the deed of trust and their obligation to do so as required by the deed.

R. F. Stout, besides exchanging gifts with appellees, ran errands, tilled the soil for a garden, mowed the lawn and cut wood for their winter use. He departed this life on July 21, 1952, approximately eight years after the deed in question was executed. Appellees had no complaint about the adequacy of his attention and services.

D. B. Stout was asked by his counsel whether or not his son, R. F. Stout, complied with the considerations mentioned in the deed and his response was: "He complied." Later he was asked on cross examination if he had any complaint about the manner in which his son was complying with the obligation imposed upon him, and he replied: "No, sir, I did not." He also stated in response to questions

by the Commissioner that he and his wife had "a little money" and they did not want to spend all they had for they wanted to be "somewhat independent".

Virginia S. Shores testified that D. B. Stout had made no requests of her for assistance since her husband's death, but that her children had rendered him services for which they received remuneration. She further testified that if the need arises she and her children would assist appellees to the best of their ability. She related that she had never heard Mrs. Schalow say that she would not comply with the considerations in the deed and that her thought was she "probably would" comply, if it became necessary.

Neither Mrs. Shores nor her children occupy the 16 acre tract, but she, Mr. Shores and several of her children reside in the vicinity of appellees. According to Mrs. Shores, the relationship between her and D. B. Stout has not been "too friendly" for sometime, and he has not visited in her home since "this trouble started." When she was asked about Mrs. D. B. Stout, she responded: "I love her just like I do my mother."

After R. F. Stout's death, the State Department of Highways condemned a portion of the tract for road improvements. The award paid was the sum of $430, of which D. B. Stout received $38, and the balance was distributed among Mrs. Schalow and the heirs of R. F. Stout.

It will be observed that, in addition to the sum of one dollar paid and love and affection, the consideration for the conveyance was: (1) that the grantees "shall look after and provide for the grantors when they need it," (2) that they shall at their expense furnish the grantors a decent burial, and (3) that they shall assume and pay when due the note amounting to $200 secured by a deed of trust on the property.

In *Keister* v. *Cubine*, 101 Va. 768, 45 S. E. 285, Melvina Cubine conveyed property that she occupied to her daughter, Rhoda L. Cubine, on November 1, 1886. The consideration stated in the deed was, in addition to love and affection and the sum of $1 paid, that "the said Melvina Cubine shall have a proper and comfortable home with said Rhoda Lucinda Cubine for the remainder of her natural life." Shortly thereafter the grantee married C. W. Keister, and they took possession of the premises. The grantor remained with them and they lived together contentedly until the grantee died in March, 1894, a period of about seven years. She left surviving

her husband and two infant children. The grantor was satisfied that grantee had fully and faithfully discharged every obligation imposed upon her by the deed.

Immediately after grantee's death, trouble began for grantor. Keister became abusive, refused to furnish support for grantor, and generally showed a lack of consideration for her. As a result of such treatment she was compelled to abandon the premises and live elsewhere. She filed a bill in chancery in which she alleged that the consideration for the conveyance had failed and prayed that the deed be set aside, and that she be restored to her original rights in the property. She also prayed that, if she was not entitled to the above relief, the property be sold, and the proceeds of the sale be applied to her support and maintenance during the remainder of her life. The trial court by its decree rescinded and annulled the deed, and restored grantor to her original rights. Keister and the infant children, by their guardian *ad litem* and next friend, appealed. The decree was reversed and remanded, and the court said:

"In the case at bar the circumstances are unusual. Neither the grantee nor those claiming under her are in default. The grantee died, having faithfully performed her part of the contract during her lifetime. Her title devolved upon her infant children, who are not in fault, because they are not capable of performing the contract during the remainder of their grandmother's life. The fault is that of the father, who is not a party to the deed, and assumed no obligations under it. His default should not be allowed to prejudice his infant children in their rights. The deed makes no provision for the event of the grantee's death before the complete performance of her contract. It is doubtless true that an important consideration moving the grantor to make the deed was the hope and expectation of that affection and regard that no one can render so acceptably as an only daughter. That solace has been removed by the hand of Providence, and no human agency can supply an adequate substitute. All that remains to the grantor is the material support provided for by the deed. The daughter's estate is insolvent, except to the extent of her interest in this property. Under these circumstances the grantor comes into a court of equity for relief. She is entitled to the full measure of the support provided for by the deed, but not to a rescission of the contract and an entire restoration of the property to her use. In tenderness to her infant grandchildren, upon whom the grantee's title has devolved, and who are without fault, a court

of equity will, through the hands of a receiver, take charge of the property as a trust asset, and administer it with due regard to the ultimate rights of the infants as well as the paramount rights of the grantor to a support. The right of the grantor to a support is above all other claims, and it may be, as suggested, that, when the value of that support has been properly ascertained, a sale of the property will be necessary, and a consumption of the *corpus* required to satisfy the demand. On the other hand, something may be left for the infant children of the grantee, which it will be the duty and pleasure of the court to preserve and protect for their benefit."

Appellants argue that appellees have failed to prove facts that would demand a rescission and that the evidence is not sufficient to justify granting any relief to appellees at this time.

On the other hand appellees urge that there has been a failure of consideration since their son's death, due to the fact his was a personal service to be rendered; when he died performance became impossible and they are deprived of any benefit they have had in knowing that their son and daughter would care for them "when they need it". They also assert there has been a failure of consideration because Mrs. Shores stated strained relations exist between her and D. B. Stout, and for the further reason that she testified on cross examination she could not pay appellee's hospital bills then if needed. Our attention is directed to a part of her testimony which follows:

"Q. Let's suppose that Mr. and Mrs. Stout both became seriously ill, would you be in a position to pay their hospital bills or to take them into your home and care for them?

"A. I couldn't pay hospital bills because it's all I can do to live now, but I'd do everything I could for him. I went up there when he was sick before and offered to do what I could. My husband and I both went up to see him.

"Q. Would any of your children be in a position to do—

"A. Well, one in Harrisonburg might be, but she has a baby and is expecting another one and they *don't their home and I* another married one and she doesn't have a home except living with her mother-in-law, and the boy in service, he could give some money."

The deed does not provide for the event of a grantee's death before the contract has been completely fulfilled. Such being the case, the death of a grantee, without more, is not grounds for a

rescission of the deed. *Keister* v. *Cubine, supra.* It may be said that the same unpleasant relationship exists, perhaps to a lesser degree, between D. B. Stout and Mrs. Shores as existed between Keister and Mrs. Cubine in *Keister* v. *Cubine, supra.* While it may be true that Mrs. Shores and her children were not in a financial position at the time the testimony was taken to pay hospital bills in event appellees became seriously ill, yet we are contemplating an occasion which may never occur. If this unfortunate situation does arise in the future, such assistance may not be needed, or the financial condition of Mrs. Shores and her children may have improved to such an extent that they will be able and desire to defray such expenses or share them along with Mrs. Schalow. We recall Mrs. Shores did say "I'd do everything I could for him."

In the record before us there has been no showing of a need for assistance or a failure of consideration or default in regard to the requirements that grantees "shall look after and provide for the grantors when they need it", and furthermore appellees have not requested any support. There has been no default or failure of consideration in furnishing grantors a decent burial, for both grantors are alive. It is conceded that the deed of trust note has been fully paid which is a complete fulfillment of that obligation imposed by the deed.

There is no present need to appoint a receiver as was done in *Keister* v. *Cubine, supra.* In that case the grantor, Mrs. Cubine, was compelled to leave the home and reside elsewhere, because Keister was abusive, inattentive and refused to render her support. In our case the grantors are occupying the premises as they have done in the past. There has been no need, or request made, for support. The proceeds received from the State Department of Highways as a result of condemnation of a portion of the land have been disbursed, and there are no other funds to be administered. Under the facts presented, the appointment of a receiver is not necessary or desirable.

Our conclusion is that this suit was prematurely instituted for there has been no default or failure of considerations contained in the deed, and that appellees' prayer for relief should be denied. In event a failure of consideration develops in the future, appropriate proceedings may be instituted.

Since we have taken this view of the case, it is not necessary to consider other questions raised and discussed.

The decree appealed from must be reversed, but the sums allowed

as part of costs are approved, and the cause will be remanded for the entry of a proper decree dismissing the bill and ordering appellees to pay all costs.

*Affirmed in part; reversed in part and remanded.*